## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.          :        Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION                  :
------------------------------------------------------- x
------------------------------------------------------- x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
------------------------------------------------------- x
```

### LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE
### TESTIMONY OF ROBERT W. BERLINER

# REDACTED
# FILED UNDER SEAL PURSUANT TO
# CONFIDENTIALITY ORDER DATED MAY 16, 2006

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jeffrey L. Osterwise
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and the Class*

**TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    An Accountant's Role and Expertise . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.    Mr. Berliner Is Highly Qualified to Opine on the Subjects Addressed in
             His Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       C.    Mr. Berliner's Testimony Will Assist The Trier of Fact to Understand the
             Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

             1.    Internal Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

             2.    Inadequacy of the Accounting Function at Veeco . . . . . . . . . . . . . . . . 5

             3.    The Phony TurboDisc Gross Profit Margins . . . . . . . . . . . . . . . . . . 7

             4.    The Incredible October 2004 TurboDisc Financial Results . . . . . . . . . . . 9

             5.    Revenue Recognition and Failure to Investigate Revenue Recognition . 10

             6.    Veeco's Phony Quarters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             7.    Other Items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.    Fed. R. Evid. 702 Dictates a Liberal Approach to the Admission of Expert
             Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.    Mr. Berliner Properly Testified About Defendants' Conduct . . . . . . . . . . . . 13

       C.    Under Second Circuit Law and Fed.R. Evid. 704, Experts May Testify About
             Mixed Questions of Fact and Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       D.    Evidence of Defendants' Misconduct After November 9, 2004 is Admissible . . 17

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

# TABLE OF AUTHORITIES

*AUSA Life Ins. Co. v. Ernst & Young,*
    206 F.3d 202 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Astra Akeibolag v. Andrx Pharms., Inc.,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Borawick v. Shay,*
    68 F. 3d 597 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.,*
    2003 WL 1878246 (S.D.N.Y. April 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579, 113 S. Ct. 2786 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Deere v. Goodyear Tire & Rubber Co.,*
    175 F.R.D. 157 (N.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fiataruolo v. United States,*
    8 F.3d 930 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re MTC Elec. Techs. Shareholders Litig.,*
    898 F. Supp. 974 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Phillips Petroleum Secur. Litig.,*
    881 F.2d 1236 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Time Warner Inc. Sec. Litigation,*
    9 F.3d 259 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Worldcom Sec. Litig.,*
    352 F. Supp. 2d 472 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 13, 14

*Katt v. City of New York,*
    151 F. Supp. 2d 313 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McCullock v. *H.B. Fuller Co.*,
    61 F.3d 1038 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Overton v. Todman & Co.*,
    478 F.3d 479 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*U.S. v. Aggarwal*,
    17 F.3d 737 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. v. Duane Two Eagle*,
    318 F.3d 785 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Hearst*,
    563 F.2d 1331 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Johnson*,
    637 F. 2d 1224 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*U.S. v. Reginald Owens*,
    301 F.3d 521 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wechsler v. Hunt Health Systems*,
    381 F. Supp. 2d 135 (S.D. N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Weiner v. Quaker Oats Co.*,
    129 F.3d 310 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL RULES**

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## I.    INTRODUCTION

Defendants moved the Court to preclude Plaintiffs from introducing the testimony of their accounting expert, Robert W. Berliner, in its entirety, on the ground that Mr. Berliner's Reports used the words "reckless" or "recklessly" in describing Defendants' conduct arguing from the fact that he used those words that **none** of his testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. As discussed below, Defendants' contention that it is impermissible for Plaintiff's expert to testify that their conduct was reckless is contrary to Fed. R. Evid. 704 and Second Circuit precedent. Moreover, Mr. Berliner's Reports address all manner of issues concerning matters such as profit margins, internal controls, revenue recognition and the like, for which the jury clearly needs and would obtain assistance from Mr. Berliner. Thus, Defendants' motion to exclude the testimony of Mr. Berliner is baseless.

Next, Defendants seek to exclude evidence regarding any act or omission by Defendants after November 9, 2004 on the ground that Plaintiffs' Consolidated Amended Class Action Complaint does not contain any allegation with respect to Defendants' conduct after that date. That contention is utterly false. As stated below, that Complaint contains multiple allegations that Defendants had a duty to correct their previously issued false statements – a duty which continued from November 9, 2004 to the end of the Class Period. In fact, as set forth herein, the law is clear in this Circuit that Defendants had a duty to correct. Further, the evidence is clear that Defendants violated that duty. Accordingly, Defendants' motion to exclude evidence of their omissions after November 9, 2004 has no conceivable justification.

In short, Defendants' motion should never have been filed. It should be denied.

1

## II.    BACKGROUND FACTS

### A.    An Accountant's Role and Expertise

As was discussed recently in *In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 479 (S.D.N.Y. 2005), an accountant who audits financial statements of public companies is required by generally accepted auditing standards ("GAAS") to assess the internal controls of the company whose financial statements are being audited to determine the reliability of the information in those financial statements.  That assessment is made to permit the auditor to determine the extent of the audit procedures to obtain evidence that will be necessary to provide reasonable assurance that particular numbers in the company's financial statements are accurate. That is, for accounts where a design and operation of a company's internal controls are such as to assure the auditor that the financial data are accurate, only minimal audit procedures are required.  Conversely, where the design or operation of internal controls is unreliable, extensive audit procedures are required. Thus, an auditor is necessarily an expert concerning internal controls.

Internal control is defined by the SEC (Securities Exchange Act Rules 13(a), 15(b), 15(d) and 15(f)), to mean a "process designed...to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles ("GAAP") and includes those policies and procedures that:

***

2.    Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles.

2

Auditors evaluate a company's internal controls to determine whether they are deficient <u>in design or operation</u>. The Public Company Accounting Oversight Board, which was created pursuant to the Sarbanes-Oxley Act, defined "control deficiency" in its Accounting Standard No. 2, ¶8 which was adopted by the SEC as follows:

- A deficiency in design exists when (a) a control necessary to meet the control objective is missing or (b) an existing control is not properly designed so that, even if the control operates as designed, the control objective is not always met.

- a deficiency in operation exists when a properly designed control does not operate as designed, <u>or when the person performing the control does not possess the necessary authority or qualifications to perform the control effectively.</u> (emphasis added)

As the court noted in *Worldcom*, in addition to the ten standards that comprise GAAS, the Auditing Standard Board of the American Institute of Certified Public Accountants has also developed statements on auditing standards, set forth in a several-hundred page volume, which are "interpretations of generally accepted auditing standards." 352 F. Supp. 2d at 499.

Among the auditing standards prescribed are analytical procedures. As stated in the applicable auditing standard, analytical procedures are used to assist the auditor in planning the nature, timing, and extent of other auditing procedures (AU §329.04a), and to reveal unexplained differences which may indicate an increased risk of material misstatement. AU §329.21.

The auditing standard states that:

Analytical procedures are an important part of the audit process and consists of evaluations of financial information made by a study of plausible relationships among both financial and non-financial data.

Analytical procedures range from simple comparisons to the use of complex models involving many relationships and elements of data. A basic premise underlying the application of analytical

procedures is that plausible relationships among data may reasonably be expected to exist and continue in the absence of known conditions to the contrary. AU §329.02.

Moreover, the auditing standard regarding analytical procedures states that "[u]nderstanding financial relationships is essential in planning and evaluating the results of analytical procedures..." AU §329.03 Thus, an experienced auditor such as Mr. Berliner has extensive experience in evaluating financial information, studying plausible relationships among both financial and non-financial data, and understanding financial relationships.

Auditors also assess what is described in auditing standards as the "control environment," which includes matters such as the "commitment to competence." As stated in AU §319.110 1.*b*:

> Competence is the knowledge and skills necessary to accomplish tasks that define the individual's job. Commitment to competence includes management's consideration of the competence levels for particular jobs and how those levels translate into requisite skills and knowledge.

Thus, experienced auditors such as Mr. Berliner are also accustomed to making judgments about the competence of persons performing tasks connected with the preparation of financial statements.

**B.    Mr. Berliner Is Highly Qualified to Opine on the Subjects Addressed in His Reports**

Mr. Berliner's vast experience in the fields of accounting and auditing demonstrates that he is an exceptionally qualified expert witness. Mr. Berliner spent thirty-three years practicing accounting and auditing at Arthur Young, a predecessor firm of Ernst & Young, and then was the national director of accounting and auditing at another accounting firm, Spicer & Oppenheim. *See* Parker Decl. Ex A (Prelim. Expert Rep. at Ex. A.). In addition, Mr. Berliner was a professor of accounting at the New York University Stern School of Business and has also been a member of several American Institute of Certified Public Accountants and Financial Accounting Standards

4

Board task forces. *Id.* Mr. Berliner has also served in various positions for the New York State Society of Certified Public Accountant (NYSSCPA) for the past twenty-five years. *Id.* Mr. Berliner's Sarbanes-Oxley experience includes serving on the auditing standards and procedures committee of the NYSSCPA, of which he is currently the chairman, during which time the committee has responded to the exposure draft of what became the PCAOB auditing standard two and to the exposure draft of what became the PCAOB auditing standard five, an effort which he led. *See* Parker Decl. Ex. B (Berliner Dep. 29:6-14).  In addition, Mr. Berliner testified that, during his career, he authored an accounting manual for his accounting firm which detailed the firm's auditing procedures. *Id.* (Berliner Dep. 206:18-207:8)

C.     **Mr. Berliner's Testimony Will Assist The Trier of Fact to Understand the Evidence**

REDACTED

5

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

# REDACTED

## III.   ARGUMENT

### A.   Fed. R. Evid. 702 Dictates a Liberal Approach to the Admission of Expert Testimony

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which has been amended to codify the holdings of *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 597 113 S. Ct. 2786 (1993) and its progeny. *Astra Akeibolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, (S.D.N.Y. 2002). The district court has broad discretion in the matter of admitting expert testimony. *McCullock v. H.B. Fuller Co.*, 61 F. 3d 1038, 1042 (2nd Cir. 1995).

In *Daubert*, the Supreme Court recognized that Rule 702 intended to relax the "traditional barriers" to 'opinion' testimony" thus "reinforc[ing] the idea that there should be a presumption of admissibility of expert testimony." *Borawick v. Shay*, 68 F. 3d 597, 610 (2d Cir. 1995)(citing *Daubert*, 509 U.S. at 588, 113 S. Ct. 2786); *accord Katt v. City of New York*, 151 F. Supp. 2d 313,

12

353 (S.D.N.Y. 2001). The Advisory Committee's Note to 2000 Amendment to Fed. R. Evid. 702

states that "the rejection of expert testimony is the exception rather than the Rule."

The Committee Note states, *inter alia*, that:

> [a] review of the caselaw after *Daubert* shows that the rejection of expert testimony
> is the exception rather than the rule. Daubert did not work a "seachange over federal
> evidence law," and "the trial court's role as gatekeeper is not intended to serve as a
> replacement for the adversary system.... Likewise, this [2000] amendment is not
> intended to provide an excuse for an automatic challenge to the testimony of every
> expert.

Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendment (internal citations omitted).

Thus, the policies of Rule 702 and the *Daubert* decision "suggest that the provision embraces

a liberal approach to the admission of expert testimony" on scientific, or other technical or

specialized matters. 29 Wright & Gold, *Federal Practice and Procedure,* Evidence section 6262,

at 190 (West, 1997). This is "typical of the [Federal Evidence] Rules liberal approach toward

admissibility." *Id.* at 184 *Deere v. Goodyear Tire & Rubber Co.,* 175 F.R.D. 157, 163 (N.D.N.Y.

1997)("Liberality and flexibility in evaluating [expert's] qualifications should be the rule . . . the

expert should not be required to satisfy an overly narrow test of his own qualifications. . . . Once

qualified as an expert witness, the court's role resembles that of a 'gatekeeper,'.... However, this role

must also take into consideration the liberal thrust of the Federal Rules of Evidence and the

'presumption of admissibility.'") (citations omitted). *See also In re Paoli R.R. Yard PCB Litig.,* 35

F. 3d 717 (3d Cir. 1994)("Rule 702 mandates a policy of liberal admissibility" which extends to the

substantive as well as formal qualifications of an expert).

13

**B.    Mr. Berliner Properly Testified About Defendants' Conduct**

Contrary to Defendants' attempt to cast Mr. Berliner's expert testimony as an attempt to

psychoanalyze Defendants' state of mind (Defs. Br. at 9-11), that is false. Mr. Berliner's testimony

properly focused on Defendants' *conduct* in this case.

As the court noted in *In re Worldcom Sec. Litig.*, 352 F. Supp. 2d 472 (S.D.N.Y. 2005), in

the Second Circuit, a plaintiff proves at trial that a defendant acted with scienter by showing that the

defendant "*acted* in a manner that easily could be 'foreseen to result in harm.'" *Id.* at 496   (citing

*AUSA Life Ins. Co. v. Ernst & Young*, 206 F. 3d 202, 221 (2d Cir. 2000)(emphasis added).  Mr.

Berliner considered and characterized Defendants' *conduct* as reckless,  based on his review of

documents and his expert background, not on their mental state.   His testimony  properly and

helpfully focused on the fraudulent nature of their financial statements, not on their mental state, and

is therefore admissible.

Precisely on point, at least two Appeals Courts have found that an expert who testified that

a defendant's reports were "fraudulent" was not opining on the ultimate issue of the mental state of

the defendant, as defendants had argued in that case.  *U.S. v. Reginald Owens*, 301 F. 3d 521, 527

(7th Cir. 2002).   The court found that the expert could not only properly opine that defendant's

appraisal reports were inadequate, and that they violated the uniform standards, but the expert could

also testify that the reports were "fraudulent and misleading" to describe the quality of the reports,

because he was addressing the *reports,* not commenting directly on defendant's mental state.  *Id.*

(citing Wright & Gold, *Federal Practice & Procedure*, Evidence §6285, at 395 ("Rule 704(b)

usually bars only a direct statement that defendant did or did not have the required mental state").

*See also U.S. v. Aggarwal*, 17 F. 3d 737, 743 (5th Cir. 1994)(government expert's use of such terms

14

as "scam," "fraudulent," and "fraud" to describe the loans at issue in a wire fraud case was not tantamount to commenting directly on defendants' state of mind, and did not violate Rule 704(b)).

Similarly, Mr. Berliner's analysis and conclusions focused on Defendants' conduct and practices, and his testimony is properly admitted.

All of the cases cited by Defendants to support their argument on this issue involve experts who opined directly on defendants' mental state and subjective intent (Defs. Br. at 9), and are, therefore, wholly inapposite here .[1]

### C.    Under Second Circuit Law and Fed. R. Evid 704, Experts May Testify About Mixed Questions of Fact and Law

Moreover, the Second Circuit has held that "[e]xperts may testify on questions of fact as well as mixed questions of fact and law. This sort of testimony is not objectionable merely 'because it embraces an ultimate issue to be decided to the trier of fact.'" *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993)(citing Fed. R. Evid. 702 and 704)

In *Fiataruolo*, an action by taxpayers for a refund of tax penalties assessed against them as responsible persons for the company's unpaid withholding taxes, the Court of Appeals held that the district court did not err in permitting a plaintiff's certified public accounting expert to testify that, based on the evidence that he looked at and the work he did, he did not believe that one of the plaintiffs was a "responsible person" under the relevant tax law, *i.e.*, that he was not responsible for the payment of taxes. *Id.* at 935.

---

[1] In *Worldcom*, cited by Defendants at page 10 of their memorandum, far from excluding an expert's opinion because it characterized conduct as "reckless," the court held that the plaintiffs' expert's report was not defective because it failed to say that the defendant accountant's audit was "reckless." 352 F. Supp 2d at 500 n.34. Thus, the case is totally irrelevant to their argument.

The Court held that the district court had properly found that the testimony was not a "legal conclusion" because the accountant's testimony was offered as part of a longer exposition on the violation of established accounting principles, and he was providing factual explanations for the company's financial procedures, then offering his opinion based on those procedures as to whether the plaintiff taxpayer was responsible under the tax law. *Id.* The accounting expert's testimony gave the jury helpful information beyond a simple statement of how its verdict should read. *Id.* He couched his opinion specifically "on the evidence that I looked at and the work that I did." *Id.* Thus, the accounting expert's opinion was not a simple bald assertion of the law and not designed to invade the province of the trial court and was properly admitted. *Id.* [2]

Courts in this district have followed *Fiataruolo*, permitting experts to testify on mixed questions of law and fact. *See Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, 2003 WL 1878246, at *5-6 (S.D.N.Y. April 11, 2003)( Rule 704 was amended years ago to provide trial courts with more latitude to allow experts to testify about issues that would help the jury understand concepts it needed to know to render a verdict despite the fact the opinions may encroach on matters of law, as long as the witness couches his opinion specifically on the evidence he looked at and the work he did; thus, court found that the testimony of plaintiff's' expert, a law professor who testified to explain general corporate governance principles and the concept of veil-piercing to the jury and

---

[2] "The courts seem more open to the admission of expert legal opinions where the subject is the application of some complex regulatory or legal standard to a specific factual background. In such a context, the opinions often involve questions of law and fact that overlap to the extent they are virtually indistinguishable." Wright & Gold, *Federal Practice and Procedure, Evidence*, §6264, at 219-220, n. 36 (collecting cases in which courts admit expert testimony as to application and interpretation of laws and legal implications of parties' conduct). This is true in complex securities cases like this one, involving complicated accounting and auditing standards for which the expert can provide useful assistance to the layman jury, as discussed above.

relied on evidence he reviewed and objective facts such as the makeup of the board of directors, did not encroach on the province of the court or jury and his testimony was crucial for the layman jury to understand fully the complex issues in the case).

See also *Wechsler v. Hunt Health Systems*, 381 F. Supp. 2d 135, 147 (S.D.N.Y. 2003)(admitting testimony of plaintiff's expert accounting witness, finding him a useful witness in a case about a contract for the sale and purchase of accounts receivable; the witness was qualified to opine on a health care company's solvency and methods for accounting for accounts receivable in breach of contract and fraudulent conveyance case, even though he had no experience in the industry, had little experience testifying as an expert, and had not taught or published in the accounting field. He was a CPA with 17 years of experience reviewing financial documents, and plaintiff had retained him to analyze thousands of records concerning the company's accounts receivable, a job for which an accountant is properly qualified, and he possessed knowledge beyond that of the average layman which would assist trier of fact to understand the complex business transactions in the case).

"Recklessness" is a commonly used word to describe a person's conduct, with a commonly understood non-legal meaning. Under these circumstances, Mr. Berliner's testimony cannot be defective merely because it utilized the word "recklessness." As the court held in *U.S. v. Duane Two Eagle*, 318 F. 3rd 785 (8th Cir. 2003), rejecting the argument that an expert's testimony should have been excluded because it utilized the words of the legal standard:

> [t]estimony is not defective merely because it utilized the words of the legal standard. Commonly used words and their plain meaning often match their legal meaning. *See, e.g., [United States v.] Johnson*, 637 F. 2d [1224] at 1246-47 [(9th Cir. 1980)]; *United States v. Hearst*, 563 F. 2d 1331, 1351 (9th Cir. 1977).

17

*Id* at 792.

Thus, Defendants' argument that Mr. Berliner should be precluded from testifying because he used the work "reckless" is contrary to Rule 704 and Second Circuit precedent.

### D.    Evidence of Defendants' Misconduct After November 9, 2004 is Admissible

Defendants' claim that Plaintiffs pleaded no claims after November 9, 2004 is simply untrue. The Consolidated Amended Complaint consistently asserts that Defendants had a duty to correct the false statements alleged in the Complaint, as follows:

> "Whether defendants … knowingly or recklessly failed to correct such statements upon learning that they were materially false or misleading" ¶ 23(c)
>
> Defendants … had the ability to prevent the issuance of the statements or cause the statements to be corrected. ¶ 159

See also ¶¶ 83, 104, and 110 (noting duty to correct at particular points in time).

The duty to correct false financial and other statements where a defendant learns or was reckless in not learning that the previously issued statements were false or misleading when made is well established in this Circuit. It is clear that the failure to correct constitutes an actionable material omission proscribed by Rule 10b-5.

In *Overton v. Todman & Co., CPAs, P.C.*, 478 F.3d 479, 486-87 (2d Cir. 2007), the Court of Appeals reversed dismissal of a compliant against an accountant for failure to correct previously issued certifications of financial statements upon learning that they were false, finding primary liability under §10(b) and Rule 10b-5 where a defendant makes a statement that is false or misleading when made and subsequently either learns or was reckless in not learning that the earlier statement was false or misleading yet fails to take reasonable steps to correct or withdraw

18

the statement while knowing that potential investors are relying on the statement.

In this case, Defendants concede that the Company's financial statements were false as evidenced by the necessity of restating; the Defendants knew that investors rely on these Financial Statements; and no steps to correct or withdraw were taken before February 11, 2005. Evidence of Defendants' knowledge or recklessness from any point in the Class Period is admissible to demonstrate liability. The duty to correct extends to all who sign SEC filings and Sarbanes-Oxley certifications, including corporate officers as well as outside accountants. *In re Time Warner Inc. Secur. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) (Liability of issuer and officers: "one circumstance creating a duty to disclose arises when disclosure is necessary to make prior statements not misleading ..."); *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 316 (3d Cir. 1997); *In re Phillips Petroleum Secur. Litig.*, 881 F.2d 1236, 1245 (3d Cir. 1989) (duty to correct applies to issuer of securities); *In re MTC Elec. Techs. Shareholders Litig.*, 898 F. Supp. 974, 987-88 (E.D.N.Y. 1995) (underwriter as well as issuer liable for failure to correct its own false statements).

REDACTED

19

REDACTED

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion *In Limine* to Preclude Testimony of

Robert W. Berliner should be denied.

Dated: June 26, 2007                    Respectfully submitted,

                                        By: _____
                                        Sherrie R. Savett
                                        Carole A. Broderick
                                        Phyllis M. Parker
                                        Jeffrey L. Osterwise
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        Facsimile: (215) 875-4674

                                        *Lead Counsel for Lead Plaintiff Steelworkers*
                                        *Pension Trust and the Class*

20