# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In Re VEECO INSTRUMENTS, INC.,  :  05-MD-1695 (CM)
SECURITIES LITIGATION             :
———————————————————— x

THIS DOCUMENT RELATES TO:        :
———————————————————— x

EDWARD J. HUNEKE, derivatively on behalf of : 05-CV-10224 (CM)
VEECO INSTRUMENTS, INC.,          :
                                  :
            Plaintiff(s),         :
                                  :
    vs.                           :
                                  :
EDWARD H. BRAUN, et al.,          :
                                  :
            Defendant(s),         :
———————————————————— x

AUGUST SCHUPP, III, derivatively on behalf of : 05-CV-10225 (CM)
VEECO INSTRUMENTS, INC.,          :
                                  :
            Plaintiff(s),         :
                                  :
    vs.                           :
                                  :
EDWARD H. BRAUN, et al.,          :
                                  :
            Defendant(s),         :
———————————————————— x

DAVID ALTMAN, derivatively on behalf of  : 05-CV-10226 (CM)
VEECO INSTRUMENTS, INC.,          :
                                  :
            Plaintiff(s),         :
                                  :
    vs.                           :
                                  :
EDWARD H. BRAUN, et al.,          :
                                  :
            Defendant(s).         :
———————————————————— x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR AN AWARD OF
## ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

I.      INTRODUCTION ............................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE ACTION..............1

III.    THE TERMS OF THE SETTLEMENT..................................................3

IV.     ARGUMENT...............................................................................

        A.    Plaintiffs' Counsel Are Entitled To A
              Reasonable Award Of Fees And Expenses...................................4

        B.    The Fees And Expenses Requested Are
              Fair And Reasonable Under Second Circuit Standards .............................6

              1.    The Time and Labor Expended by Counsel Exceed
                    the Requested Fee Award ................................................6

              2.    The Magnitude and Complexity of the Litigation
                    Establish the Reasonableness of the Requested Fee Award ...........7

              3.    The Contingent Nature of the Representation Render
                    the Requested Fee Award Fair and Reasonable..............................8

              4.    The Quality of the Representation Demonstrate the
                    Requested Fee Award is Reasonable ...............................9

              5.    The Requested Fees Are Reasonable in Relation to
                    the Benefits Conferred by the Litigation .......................................10

              6.    Public Policy Supports the Requested Fee Award........................11

              7.    Shareholder Reaction Also Supports the Requested Fee Award...12

        C.    Fairness Of The Fee Is Also Supported By State Law .............................12

              1.    The Applicable Standards under Delaware Law ...........................18

      (a)     The Benefits Achieved ......................................................13

      (b)     Contigent Nature of the Fees ...........................................14

      (c)     The Efforts of Counsel .....................................................16

      (d)     Standing and Ability of Counsel .......................................16

      (e)     Public Policy Considerations ............................................17

V.     CONCLUSION ...................................................................................................18

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*Allied Artists Pictures Corp. v. Baron,*
    413 A.2d 876 (Del. 1980) ....................................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985) ...........................................................................................17

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) ...........................................................................7

*Blum v. Stenson,*
    465 U.S. 886 (1984) .............................................................................................6

*Braun v. Fleming-Hall Tobacco Co.,*
    93 A.2d 495 (Del. 1952) ....................................................................................14

*Chrysler Corp. v. Dann,*
    223 A.2d 384 (Del. 1966) ..................................................................................14

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949) ...........................................................................................11

*Cohn v. Nelson,*
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................11

*Conley v. Sears, Roebuck & Co.,*
    222 B.R. 181 (D. Mass. 1998) ..............................................................................7

*Cope v. Reuter,*
    Case No. 6:06-CV-449-Orl-28DAB,
    Final Judgment & Order
    (M.D. Fla. Apr. 20, 2007) ...................................................................................11

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) .............................................................................5, 6

*City of Detroit v. Grinnell Corp.,*
    560 F.2d 1093 (2d Cir. 1977) .............................................................................10

*Emerald Partners v. Berlin,*
    787 A.2d 85 (Del. 2001) ....................................................................................15

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) ...............................................................................2, 5

*Gottlieb v. Heyden Chem. Corp.*,
   105 A.2d 461 (Del. 1954) .............................................................................. 12-13

*Granada Inv., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ...............................................................................11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................5

*In re AXA Fin. S'holders Litig.*,
   No. 18268,
   2002 Del. Ch. LEXIS 57 (Del. Ch. May 16, 2002) ...............................................13

*In re Ames Dep't Stores, Inc. Debenture Litig.*,
   835 F. Supp. 147 (S.D.N.Y. 1993) ..........................................................................6

*In re Anderson Clayton S'holders' Litig.*,
   No. 8387,
   1988 Del. Ch. LEXIS 127 (Del. Ch. Sept. 19, 1988) ............................................11

*In re Continental Illinois Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...................................................................................5

*In re F&M Distribs., Inc. Sec. Litig.*,
   No. 95-CV-71778-DT,
   1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) ........................... 11-12

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   209 F.R.D. 94 (E.D. Pa. 2002) ...............................................................................11

*In re Intek Global Corp.*,
   C.A. No. 17207, Transcript,
   Strine, V.C. (Del. Ch. Apr. 24, 2000) ...................................................................16

*In re Ivan F. Boesky Secs. Litig.*,
   888 F. Supp. 551 (S.D.N.Y. 1995) ..........................................................................6

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................5, 17

*In re Walt Disney Co. Deriv. Litig.*,
   907 A.2d 693 (Del. Ch. 2006)................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................8, 10

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964) ...........................................................................................17

*Kahn v. Lynch Commc'n Sys., Inc.*,
   669 A.2d 79 (Del. 1995) ...................................................................................15

*Lewis v. S.L. & E., Inc.*,
   629 F.2d 764 (2d Cir. 1980) .............................................................................12

*Malchman v. Davis*,
   761 F.2d 893 (2d Cir. 1985) ...............................................................................5

*McKittrick v. Gardner*,
   378 F.2d 872 (4th Cir. 1967) ............................................................................14

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970),
   *rev'd & remanded on other grounds*,
   552 F.2d 1239 (7th Cir. 1977) ...........................................................................4

*Polk v. Good*,
   507 A.2d 531 (Del. 1986) ........................................................................... 13-14

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) .......................................................................4, 5

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) .....................................................................15

*Seinfeld v. Robinson*,
   246 A.D.2d 291 (N.Y. App. Div. 1998) ..............................................................iii

*Seinfeld v. Robinson*,
   676 N.Y.S.2d 579 (N.Y. App. Div. 1998) ...........................................................4

*Sugarland Indus. Inc. v. Thomas*,
   420 A.2d 142 (Del. 1980) .................................................................................13

*Swacker v. Pennroad Corp.*,
   57 A.2d 63 (Del. 1947) .....................................................................................13

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-11814,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ...................................9, 10

*Tipton v. Mill Creek Gravel, Inc.*,
    373 F.3d 913 (8th Cir. 2004) ................................................................................4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..............................................................................7

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ..............................................................................10

# I. INTRODUCTION

Plaintiffs respectfully submit this memorandum of law in support of their application for approval of their agreement with defendants to pay attorneys' fees and expenses in the amount of $515,000 (the "Fee Award") in connection with the settlement of the above-captioned derivative litigation (the "Action"). In light of the substantial benefits achieved in the Action, specifically the material changes to Veeco Instruments, Inc.'s ("Veeco" or the "Company") corporate governance, the time and effort expended by plaintiffs' counsel, the contingent nature of counsel's representation, and the fees awarded in similar lawsuits achieving similar results, the Fee Award is eminently fair and reasonable and should be approved.

## II. FACTUAL AND PROCEDURAL BACKGROUND OF THE ACTION

For a detailed discussion of the nature of the Action, the procedural history of this derivative litigation, the extensive factual and legal research and discovery performed by counsel and the settlement negotiations, the Court is respectfully referred to the Declaration of Robert I. Harwood In Support of Final Settlement and Fee Application ("Harwood Dec."), and to Plaintiffs' Memorandum of Law in Support of Proposed Settlement (the "Settlement Brief"), filed concurrently herewith.

On February 11, 2005, Veeco announced that it was postponing the release of its financial results for the fourth quarter and fiscal year 2004 pending completion of an internal investigation of improper accounting transactions at its recently acquired TurboDisc division. Veeco revealed that "[t]he investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of TurboDisc." Harwood Dec. ¶ 7. In response to this announcement, Veeco's common stock price plummeted and numerous securities fraud class action lawsuits were filed against the Company. *Id.* ¶¶ 8, 9. Then, on

March 16, 2005, Veeco revealed that it lacked the proper controls and oversight to adequately and responsibly report its financial results, forcing the Company to restate its financial results. *Id.* ¶¶ 11-12.

Plaintiffs filed the Action against certain of its current and former officers and directors[1] alleging that Veeco's Board of Directors (the "Board") breached its fiduciary duties of loyalty and good faith by failing to implement a proper internal reporting system and an adequate system of corporate checks and balances in order to safeguard the TurboDisc division from financial fraud. Plaintiffs' counsel continued their comprehensive investigation of the claims asserted in the Action, including, *inter alia*: (i) inspecting, reviewing, and analyzing the Company's financial filings; (ii) researching corporate governance issues; and (iii) researching the applicable law with respect to plaintiffs' claims, as well as the potential defenses thereto. Harwood Dec. ¶¶ 19-29. Based upon this ongoing investigation, plaintiffs filed a Consolidated Amended Verified Shareholder Derivative Complaint and successfully opposed defendants' motion to dismiss.

Plaintiffs also aggressively pursued discovery in a coordinated effort with the plaintiffs in the securities class action. In the course of this discovery, plaintiffs analyzed almost 200,000 pages of documents, took eight depositions, and participated in an additional six depositions taken in the securities class action. Plaintiffs also served requests pursuant to the Freedom of Information Act and obtained and inspected additional documents related to plaintiffs' allegations of export law violations.

---

[1]    Edward H. Braun, Peter J. Simone, Richard A. D'Amore, Joel A. Elftmann, Heinz K. Fridrich, Douglas A. Kingsley, Paul R. Low, Roger D. McDaniel, Irwin H. Pfister and Walter J. Scherr were each members of Veeco's Board during the Relevant Period, and Braun has been Veeco's Chairman and CEO since 1990. Harwood Dec. ¶ 3, n.1.

Further, plaintiffs participated in a mediation on October 11, 2006. Harwood Dec. ¶ 31. In advance of the mediation, plaintiffs retained an expert to provide a preliminary damage analysis and prepared detailed pre-mediation submissions containing a thorough analysis of the underlying facts, liability and damages. *Id.* at ¶ 30.

When the mediation and ongoing settlement discussion failed, plaintiffs' counsel moved for leave to file a Second Consolidated Amended Verified Shareholder Derivative Complaint to include allegations of stock option backdating. Defendants adamantly opposed the motion resulting in substantial briefing by both sides. *Id.* at ¶ 32. Thereafter, plaintiffs began trial preparation including the exchange of expert reports, and the preparation of a final pre-trial order. *Id.* at ¶¶ 33, 34. These efforts required plaintiffs' counsel to re-review and analyze the underlying documents and conduct a thorough review of the deposition transcripts to designate trial exhibits and testimony. *Id.*

### III. THE TERMS OF THE SETTLEMENT

With a trial quickly approaching, the parties renewed their settlement discussions. After vigorous, good faith, arm's-length negotiations, the parties had reached an agreement in principle on the terms of settlement as reflected in a Memorandum of Understanding which was executed on November 5, 2007. A Stipulation and Agreement of Settlement (the "Stipulation") reflecting this agreement was executed on December 19, 2007 and filed with the Court on December 20, 2007 (the "Settlement"). *Id.* at ¶ 35.

The Settlement provides for corporate governance reforms that will confer significant benefits on Veeco and its shareholders. The Settlement terms include the following changes to Veeco's corporate governance practices: (i) independent directors must now comprise two-thirds of the Board membership; (ii) the Board has designated a "Lead Independent Director" to assist

both the Chairman and the Board and the coordination of activities of the Board's other independent directors; (iii) the Board will designate a Chief Compliance Officer having important monitoring duties; and (iv) Veeco agrees to follow the "best practices" in connection with stock option awards. *Id.* at ¶ 36.

In connection with the Settlement, defendants agreed, subject to Court approval, to pay the Fee Award.

## IV. ARGUMENT

### A.    Plaintiffs' Counsel Are Entitled To A Reasonable Award Of Fees And Expenses.

Where, as here, a plaintiff has successfully litigated a shareholder derivative action, plaintiff's counsel are entitled to an award of attorneys' fees and expenses. *See, e.g., Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970), *rev'd & remanded on other grounds*, 552 F.2d 1239 (7th Cir. 1977); *Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922-23 (8th Cir. 2004); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-95 (6th Cir. 1974). To be entitled an award of attorneys' fees and expenses, plaintiff's counsel need not confer a quantifiable monetary benefit on the corporation; rather, corporate governance reforms and other non-monetary relief are sufficient. *See, e.g., Mills*, 396 U.S. at 396 (awarding attorneys' fees in a case resulting in "'corporate therapeutics'"); *Ramey*, 508 F.2d at 1194 (services performed by plaintiffs' attorneys can justify an award of fees even though "it may be impossible to assign an exact monetary value to the benefit"); *Seinfeld v. Robinson*, 676 N.Y.S.2d 579, 582 (N.Y. App. Div. 1998) ( "a substantial benefit accruing to the corporation need not have a readily ascertainable monetary value" to support an award of attorneys' fees). As the court held in *Ramey*:

> "The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale. Although the earliest cases recognizing a

> right to reimbursement involved litigation that had produced or preserved a 'common fund' for the benefit of a group, ***nothing in these cases indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursement of expenses***."

*Ramey*, 508 F.2d at 1195 (emphasis added).

In considering awards of attorneys' fees and expenses in class action and derivative litigation, courts focus on six primary factors: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974)("*Grinnell I*").

Moreover, where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (An agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("[W]here, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement."); *see also In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (approving agreed-to fees that were negotiated based on market rates).

5

Application of each of the foregoing factors strongly supports the fairness and reasonableness of the Fee Award,  Accordingly, the Court should approve the agreed-upon amount of fees and expenses.

**B.    The Fees And Expenses Requested Are Fair And Reasonable Under Second Circuit Standards**

**1.    The Time and Labor Expended by Counsel Exceed the Requested Fee Award**

In an action such as this which confers a substantial benefit upon the Company and its stockholders that is not readily susceptible to a monetary valuation, courts have applied a lodestar multiplier method to calculate a reasonable award of attorneys' fees. *See, e.g., In re Ivan F. Boesky Secs. Litig.*, 888 F. Supp. 551, 561-62 (S.D.N.Y. 1995).  A "lodestar" calculation involves multiplying the number of hours expended by a reasonable hourly rate for each attorney's time. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 888 (1984).

Calculation of a reasonable fee under the lodestar multiplier analysis requires a three-step process.  First, the court must quantify the amount of time the attorneys expended in prosecuting the action.  *Grinnell I*, 495 F.2d at 470; *Ivan F. Boesky*, 888 F. Supp. at 561-62.   Next, the court must "multiply the number of hours that each lawyer worked on the case *by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation*."  *Grinnell I*, 495 F.2d at 471 (emphasis added).  The resulting number is the attorney's lodestar.  The third and final step is the consideration whether an enhancement or multiplier of the lodestar is warranted, taking into consideration "such factors as: (i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved."  *Ivan F. Boesky*, 888 F. Supp. at 562, citing *In re Ames Dep't Stores, Inc. Debenture Litig.*, 835 F. Supp. 147, 150 (S.D.N.Y. 1993).  Applying

6

these standards, courts across the country in similar shareholder and derivative litigation typically apply a multiplier of 3 to 5 to compensate counsel, *inter alia*, for the risk of contingent representation. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing 23 settlements and multipliers for each, in which the average multiplier is 3.28); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (multiplier of 8.9 in a derivative action); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("Most lodestar multiples awarded in cases like this are between 3 and 4.").

In the present case, plaintiffs' counsel reasonably spent more than 5,500 hours investigating, analyzing, prosecuting and preparing the claims in the derivative action for trial. *See* Harwood Dec. at ¶ 54. Plaintiffs' counsels' total lodestar is $2,595,385. *Id.* at ¶ 54. Additionally, plaintiffs' counsel have incurred unreimbursed expenses of $127,025.13. *Id.* at ¶ 55. *See* Exhibits B through E to Harwood Dec. Thus, the requested fees less expenses total $389,974.87 and is a mere fraction of plaintiffs' counsel's lodestar, effectively resulting in a negative multiplier. Thus, the Fee Award is undeniably reasonable in light of well-established case law, particularly since plaintiffs' counsel has agreed to a substantial reduction of their lodestar. The reasonableness of the Fee Award is further highlighted by the fact the fees and expenses were the product of arm's-length negotiations. Harwood Dec. ¶ 51. Accordingly, the Fee Award should be approved.

## 2. The Magnitude and Complexity of the Litigation Establish the Reasonableness of the Requested Fee Award

This was a complex and demanding case involving claims for relief under common and Delaware corporate law. As discussed in the Settlement Brief, this Action involved particularly complex factual and legal issues concerning, among other things: (i) the duties of corporate directors under Delaware law; (ii) the protection afforded corporate directors under Delaware

law by virtue of the business judgment rule; (iii) complex accounting rules and regulations; and (iv) the completeness and accuracy of Company's disclosures over an extended period of time. *See* Settlement Brief at 13-20. While these issues were not novel in the sense of being questions of first impression, board liability was a complex and demanding question.

### 3. The Contingent Nature of the Representation Render the Requested Fee Award Fair and Reasonable

Unlike defense counsel, who are customarily compensated on a current basis throughout litigation, plaintiffs' counsel have litigated this action on a purely contingent basis, having received no compensation and no reimbursement of the significant expenses incurred. Any fee award or expense reimbursement to plaintiffs' counsel has always been contingent on the result achieved and on this Court's exercise of its discretion in making any award. In this case, plaintiffs' counsel's compensation was totally dependent upon the outcome of this Action.

The issues presented in the Action rendered the case inherently risky from the start. Risk is properly considered in determining an appropriate fee award. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted). As discussed at length in the Settlement Brief and the Harwood Declaration, the Action involved a plethora of difficult issues of fact and law. From the outset, the risks assumed by counsel in prosecuting this case on a contingent fee basis were substantial. In undertaking the prosecution of this case, plaintiffs' counsel were at risk for all of their time and expenses. Plaintiffs faced fierce resistance from defendants, both on the facts and the law. As described in detail in the Settlement Brief, had the matter proceeded, plaintiffs would have faced formidable substantive legal and practical obstacles, including the powerful

protections of the business judgment rule and possible exculpation of director liability under Delaware corporate law. Settlement Brief at 15-17.

### 4.    The Quality of the Representation Demonstrate the Requested Fee Award is Reasonable

Courts have recognized that the skills and experience of plaintiffs' counsel. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-11814, 2004 U.S. Dist. LEXIS 8608, at *20 (S.D.N.Y. May 14, 2004) (counsel's skill and prior experience in specialized field of shareholder securities litigation is relevant in determining fair compensation). Plaintiffs' counsel are highly skilled and experienced in prosecuting shareholder derivative actions, and have successfully negotiated the valuable settlement that saved the parties and the Court significant additional time, expense, and effort of further litigation. As discussed in the brief submitted in support of the Settlement and the Harwood Declaration, the Settlement provides both the Company and its shareholders with substantial and valuable changes in Veeco's corporate governance practices.

It took considerable skill to achieve this Settlement.   To successfully pursue the derivative claims, plaintiffs' counsel had to possess expertise in state law governing the fiduciary duties of officers and directors, as well as the knowledge to distill and analyze from thousands of pages of documents the facts giving rise to plaintiffs' claims.  Plaintiffs' counsel assembled a team that possessed the necessary expertise.  These combined talents allowed counsel to plead claims and theories of liability to pursue this Action, obtain the discovery they needed to analyze the strength and weaknesses of these claims and bring defendants to the negotiating table, all to the benefit of the Company.   The establishment of model corporate governance reforms is a testament to plaintiffs' counsel's skill and expertise.

This Action was vigorously contested, and defendants were represented by highly capable and well-regarded lawyers. The quality of opposing counsel is important in assessing the

quality of the services rendered by plaintiffs' counsel. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749 ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *20 (same). Defendants were represented by Gibson, Dunn & Crutcher LLP, which is nationally recognized for their expertise in corporate law. Defendants' counsel vigorously contested plaintiffs' claims at every stage of this Action. The ability of plaintiffs' counsel to obtain a very favorable settlement for the Company in the face of formidable legal opposition is further proof of the superior quality of their work.

### 5. The Requested Fees Are Reasonable in Relation to the Benefits Conferred by the Litigation

It has long been recognized that the "touchstone" for the reasonableness of a fee award is the benefit conferred upon the Company and its shareholders. *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977) ("*Grinnell II*"). In the Action, plaintiffs' counsel conducted an extensive investigation, drafted high-quality pleadings, engaged in extensive discovery, virtually prepared the Action for trial and negotiated and documented an excellent settlement for the benefit of Veeco and its shareholders. *See* Harwood Dec. at ¶¶ 18-36. As a result of plaintiffs' efforts, Veeco agreed to adopt a significant set of corporate governance measures that are specifically designed to correct the misconduct alleged in the derivative action and to prevent its recurrence. Hence, through their efforts in the derivative action, plaintiffs' counsel have conferred valuable and long lasting benefits on Veeco and its shareholders. *See, e.g.*, *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 466 (5th Cir. 1983) ("Influencing the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted 'even though no direct monetary benefits are paid by the defendants to the corporation.'")).

While not readily quantifiable, the magnitude of the corporate governance reforms provided by the Settlement demonstrate that the requested fee award is fair and reasonable.

In comparable actions achieving comparable relief, courts have routinely awarded attorneys' fees in the range of $500,000 to $3 million. *See, e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) (awarding $2.25 million in attorneys' fees and expenses); *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) (affirming district court's award of $4.3 million in fees and expenses for derivative settlement yielding corporate governance changes aimed at increasing role of special committee); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94 (E.D. Pa. 2002) (approving attorneys' fees of approximately $5 million plus reasonable expenses where settlement conferred exclusively non-monetary benefits to class members); *Cope v. Reuter*, Case No. 6:06-CV-449-Orl-28DAB, Final Judgment & Order (M.D. Fla. Apr. 20, 2007).[2]

### 6.    Public Policy Supports the Requested Fee Award

Courts have long recognized "the significant institutional role of class and derivative actions in the enforcement of the fiduciary duties assumed by corporate officers and directors." *In re Anderson Clayton S'holders' Litig.*, No. 8387, 1988 WL97480, at *5 (Del. Ch. Sept. 19, 1988). The Supreme Court explained that derivative action thus promote a strong public policy:

> This remedy, born of stockholder helplessness, was long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests. It is argued, and not without reason, that *without it there would be little practical check on such abuses*.

---

[2] All unreported cases are contained in a compendium filed concurrently herewith.

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949).   Consequently, as the court

held in *In re F&M Distribs., Inc. Sec. Litig.*, No. 95-71778, 1999 U.S. Dist. LEXIS 11090 (E.D.

Mich. June 29, 1999):

> Society's stake in rewarding attorneys who can produce such benefits in
> complex litigation such as in the case at bar counsels in favor of a
> generous fee, as does the realization that they undertook this case on a
> contingent fee basis, which required them to fund all of the significant
> litigation costs while facing the risk of a rejection of their clients' claims
> on the merits.

*Id.* at *18.

The complexity and societal importance of shareholder derivative and class action

litigation calls for the involvement of the most able counsel. To encourage first-rate attorneys to

represent plaintiffs on a contingent basis in this type of fiscally and socially important litigation,

attorneys' fees awarded should reflect this goal.   As such, the Fee Award should be approved.

### 7.    Shareholder Reaction Also Supports the Requested Fee Award

In this case, the Notice of Settlement was issued to Veeco stockholders, via a current

Report on Form 8-K and on the Company's website. Many of these stockholders are

sophisticated institutions with access to their own legal counsel. Nonetheless, not one

stockholder has lodged an objection to plaintiffs' counsel's request for fees and expenses.

Considering that Veeco stockholders -- including its institutional holders -- do not contest the

fairness and reasonableness of the fees and expenses, the Court should approve the Fee Award.

### C.    Fairness Of The Fee Is Also Supported By State Law

Because plaintiffs' causes of action are based upon state law, an analysis of fee

jurisprudence under the applicable state law is also relevant. *See Lewis v. S.L. & E., Inc.*, 629

F.2d 764, 773 n.21 (2d Cir. 1980) (settlement of state law claims requires that settlement be

analyzed under state law). Veeco is a Delaware corporation, and under Delaware law, in derivative and class actions, plaintiffs' counsel are entitled to an award of attorneys' fees and expenses where counsel's litigation efforts achieve a benefit that inures to a nominal corporate defendant or to all members of the class. *Gottlieb v. Heyden Chem. Corp.*, 105 A.2d 461, 462 (Del. 1954); *Allied Artists Pictures Corp. v. Baron*, 413 A.2d 876, 878 (Del. 1980). In this case, the creation of the settlement benefits resulted from the efforts of plaintiffs' counsel in aggressively prosecuting the derivative action and, accordingly, plaintiffs' counsel are entitled to an award of fees and expenses.

### 1.    The Applicable Standards under Delaware Law

Delaware courts have enumerated several factors to be considered in determining fee allowances in shareholder actions, which are remarkably similar to the factors discussed above under Second Circuit standards. These factors include: (i) the benefits achieved in the action; (ii) the efforts of counsel and the time spent in connection with the case; (iii) the contingent nature of the fee; (iv) the difficulty of the litigation; and (v) the standing and ability of counsel involved. *See, e.g.*, *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149-50 (Del. 1980); *Swacker v. Pennroad Corp.*, 57 A.2d 63, 69 (Del. 1947). As discussed in more detail above, these criteria fully support the request for fees and expenses in this case.

### (a)    The Benefits Achieved

It is well settled that the benefit achieved by the litigation is the factor accorded the greatest weight in determining the fee to be awarded. *Sugarland*, 420 A.2d at 149-50. As detailed above, the successful prosecution of the derivative action resulted in significant corporate governance reforms.

Counsel's entitlement to a substantial award is enhanced when the benefit flows directly and proximately from the litigation. Delaware courts have consistently placed a significant value

13

upon non-monetary benefits obtained for shareholders. *See, e.g., In re AXA Fin. S'holders Litig.*, No. 18268, 2002 Del. Ch. LEXIS 57 (Del. Ch. May 16, 2002) (awarding $3 million in fees where plaintiffs' partial cause of increased transaction consideration); *Polk v. Good*, 507 A.2d 531, 538-39 (Del. 1986) (affirming award of $700,000 in fees, where benefit consisted of modification of voting provision in stock repurchase agreement).

### (b)    Contingent Nature of the Fees

Delaware courts universally recognize that the contingent nature of the fee also must be taken into account in awarding attorneys' fees. *See, e.g., Chrysler Corp. v. Dann*, 223 A.2d 384, 389-90 (Del. 1966). As discussed in detail above, plaintiffs' counsel devoted many hours of hard work to the prosecution of this difficult and complex case, as well as confirmation of the fairness of the Settlement and negotiation and documentation of the Settlement's terms, never having any assurance of receiving any fees or even reimbursement of their out-of-pocket expenses. *See* Harwood Dec. at ¶¶ 54-55.

Delaware courts, among many others, have long-recognized that in reviewing fee applications, the fact that petitioner's compensation is contingent upon recovery should be taken into account. *Braun v. Fleming-Hall Tobacco Co.*, 93 A.2d 495, 496 (Del. 1952). The contingency factor is based on elementary considerations of fairness and justice. As the United States Court of Appeals for the Fourth Circuit explained in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967): "The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services." *See also Chrysler*, 223 A.2d at 389 (Chancellor exercised "sound business judgment" by taking "the contingent nature of the litigation" into consideration in fixing the amount of attorneys' fees.)

The contingent nature of plaintiffs' counsels' engagement in the Action and the risks of litigation should be given substantial weight by the Court in reviewing the Fee Award. The risk of non-payment in contingent-fee stockholder litigation is quite real. For example, in the recent well-known *Disney* derivative action, plaintiffs' counsel devoted thousands of hours, and incurred millions of dollars in expenses, only to see judgment entered against them on all claims, which was recently affirmed on appeal. *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, *aff'd*, 906 A.2d 27 (Del. 2006).[3]  Indeed, the reported and unreported opinions of Federal courts and Delaware's Chancery Court are replete with examples of other stockholder actions that were dismissed outright on motion practice,[4] or ultimately ended in post-trial defeat.[5]  No fee of any sort is earned or awarded in such cases, nor do plaintiff's counsel recover their often substantial out-of-pocket expenses.

Thus, while plaintiffs' counsel succeeded in sucessfully resolving the Action, it cannot be disputed that they incurred substantial risk that the Action would be unsuccessful and that their efforts would go entirely uncompensated. The Fee Award appropriately reflects the risk that plaintiffs' counsel would expend substantial time, effort, and costs only to have the Company's

---

[3]  "The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award. In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee." *Ressler v. Jacobson*, 149 F.R.D. 651, 656-57 (M.D. Fla. 1992) (citations omitted).

[4]  There are so many Delaware decisions (many of which were affirmed on appeal) dismissing stockholder suits based on Rule 23.1 (demand futility) and Rule 12(b)(6) (failure to state a claim) that any effort to provide an illustrative list would seem trivial. It should suffice to say that far more stockholder actions end in defeat than victory.

[5]  *See, e.g., Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001) (entering judgment for defendants on all claims after two trials); *Kahn v. Lynch Commc'n Sys., Inc.*, 669 A.2d 79 (Del. 1995) (dismissal of all plaintiffs derivative claims on appeal).

claims dismissed at summary judgment or trial. Thus, the Fee Award should be approved based on the contingent nature of plaintiffs' counsels' undertaking.

### (c)    The Efforts of Counsel

As discussed above, plaintiffs' counsel conducted extensive discovery, including either directly taking or participating in 14 depositions, engaged in a mediation and ultimately prepared the case for trial. It was only through the diligent efforts of plaintiffs' counsel and their willingness to proceed to trial that plaintiffs were able to obtain the substantial corporate governance reforms embodied in the Settlement. Plaintiffs' counsel should be rewarded for the benefit that they created and for the fact that they were willing to proceed to trial on this matter. Moreover, the amount of the fee was negotiated at arm's-length between plaintiffs' and defendants' counsel. Under such circumstances, the Delaware courts have expressed reluctance to "second-guess" the settling defendants' agreement to pay the fee, with the result that, while the Court must be satisfied as to its fairness and reasonableness, the Court's scrutiny can be less intensive. *See In re Intek Global Corp.*, C.A. No. 17207, Transcript at 36-37, Strine, V.C. (Del. Ch. Apr. 24, 2000).

### (d)    Standing and Ability of Counsel

Another factor that may be considered by the Court on an application for attorneys' fees is the standing and ability of counsel. As discussed above, the attorneys who prosecuted this derivative action comprise some of the most experienced and well-regarded attorneys in the field of shareholder class and derivative litigation. The reputations and skill of the law firms defending the derivative actions, who vigorously defended their clients' interests, are also well known to this Court. The quality and determination of opposing counsel enhance the significance of the result plaintiffs' attorneys were able to achieve.

16

(e)    **Public Policy Considerations**

Individuals wronged by violations of corporate law should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases. The costs and fees involved in such litigation often substantially outweigh the economic interest the individual stockholder has at stake. Moreover, such individuals rarely have the financial resources to pay customary fixed hourly rates for such services.

A large segment of the public would be denied a remedy for violations of the securities laws and the breach of fiduciary duties by the management of public companies if contingent fees awarded by the court did not fairly compensate counsel for the services provided, the risks undertaken, and the delay before any compensation is received. *See Union Carbide Corp.*, 724 F. Supp. at 169. Moreover, because the U.S. Supreme Court has emphasized that private actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action,'" it is imperative that the filing of contingent class action and derivative lawsuits not be chilled by the failure to award attorneys' fees or by the imposition of fee awards that fail to adequately compensate counsel for the risks of pursuing such litigation, and the benefits that would not otherwise be achieved. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

The complexity and societal importance of stockholder and derivative litigation calls for the involvement of the most able counsel obtainable. To encourage first-rate attorneys to represent plaintiffs on a contingent basis in this type of socially important litigation, attorneys' fees awarded should reflect this goal.

17

## V.  **CONCLUSION**

For all of the foregoing reasons, plaintiffs respectfully request that the Court approve the

Fee Award.

Dated:  March 21, 2008

HARWOOD FEFFER LLP

By: _____
     Robert I. Harwood (RH-3286)
488 Madison Avenue
New York, NY 10022
Telephone:  (212) 935-7400

GOLDMAN SCARLATO & KARON, P.C.
Paul J. Scarlato (pro hac vice) (PS-3007)
Brian D. Penny (pro hac vice) (BP-4301)
101 West Elm Street, Suite 360
Conshohocken, PA 19428
Telephone:  (484) 342-0700

FARUQI & FARUQI LLP
Nadeem Faruqi (NF-1184)
Shane Rowley  (SR-0740)
369 Lexington Avenue, 10th Floor
New York, NY 10017-6531
Telephone:  (212) 983-9330

THE WEISER LAW FIRM, P.C.
Robert B. Weiser (Of Counsel)
Brett D. Stecker (Of Counsel)
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone:  (610) 225-2677

*Attorneys for Plaintiffs*